IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------x
```
In re                                    Chapter 11

DESIGNLINE CORPORATION, et al.,[1]       Case No. 13-12089 (MFW)

          Debtors                        (Joint Administration Pending)
```
----------------------------------------------------------x
```

### DEBTORS' MOTION FOR (I) INTERIM AND FINAL ORDERS AUTHORIZING DEBTORS TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1) AND 364(E), AND (II) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B) AND (C)

DesignLine USA, Inc., ("**DesignLine**"), and DesignLine Corporation ("**DLC**") as debtors and debtors-in-possession (collectively, the "**Debtors**"), in the above-referenced chapter 11 cases (the "**Cases**") hereby move (the "**DIP Motion**") for entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**") and a Final Order (as defined below), pursuant to sections 105, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 507 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), that, among other things:

(i)      authorizes the Borrowers to obtain a senior secured, super-priority, multiple draw term credit facility (such facility, the "**DIP Facility**") of up to $3 million in the aggregate principal amount pursuant to the terms of (x) the Interim Order, (y) that certain Senior

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtors' federal taxpayer identification number are DesignLine Corporation (3294) and DesignLine USA, LLC (3957).  The Debtors' mailing address is 2309 Nevada Boulevard, Charlotte, NC 28273.

Secured Super Priority Debtor-in-Possession Credit Agreement, in substantially the form attached to the Interim Order as Exhibit A (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "**DIP Credit Agreement**"),[2] among Borrowers and Cyrus Opportunities Master Fund II, Ltd., Cyrus Select Opportunities Master Fund, Ltd., Crescent 1, LP (collectively the "**Cyrus Entities**") and potentially certain other lenders thereto (the "**DIP Lenders**") and (z) any and all other Loan Documents (as defined in the DIP Credit Agreement) (together with the DIP Credit Agreement, collectively, the "**DIP Loan Documents**"), which, if approved on a final basis, would consist of $3 million of new money funding (the "**DIP Loans**"), of which up to $375,000.00 shall be available upon entry of the Interim Order, subject to the terms and conditions of the Interim Order, the Final Order (as defined below) and the DIP Loan Documents (all DIP Loans made to or for the benefit or account of, the respective Debtors pursuant to the DIP Loan Documents, and all other obligations and liabilities of the Debtors arising under the DIP Loan Documents, including, without limitation, all Loan Document Obligations as defined in the DIP Credit Agreement, collectively, the "**DIP Obligations**");

(ii)     approves the terms of, and authorizes the Debtors to execute and deliver, and perform under, the DIP Loan Documents and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

(iii)     authorizes each Debtor to grant, in accordance with the relative priorities set forth herein to the DIP Lenders, Liens on all of the DIP Collateral (as defined below) pursuant to sections 364(c) and (d) of the Bankruptcy Code, which Liens shall be senior to the

---

[2] Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the DIP Credit Agreement. Without limiting the foregoing, the term "Event of Default" as used herein shall have the meaning given to such term in the DIP Credit Agreement.

Primed Liens (as defined below), but shall be junior to the First Priority Specified Vehicle Lien (defined below) and (y) to the DIP Lenders super-priority administrative expense claims having recourse to all prepetition and post-petition property of the Debtors' estates, now owned or hereafter acquired and proceeds thereof;

        (iv)    vacates the automatic stay imposed by § 362 of the Bankruptcy Code in accordance with Paragraphs 5, 13(a), and 13(c) of the Interim Order to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents;

        (v)    schedules a final hearing on the DIP Motion to be held within fourteen (14) days after the entry of the Interim Order (the "**Final Hearing**") to consider entry of a final order, acceptable in form and substance to the DIP Lenders, that grants all of the relief requested in the DIP Motion on a final basis (the "**Final Order**"); and

        (vi)    waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of the Interim Order.

In support of the DIP Motion, the Debtors rely upon and incorporate by reference the Declaration of Katie Goodman In Support of Chapter 11 Petitions (the "**Declaration**"), which is being filed with the Court concurrently herewith. In further support of the Motion, the Debtors, by and through their undersigned proposed co-counsel, respectfully represent:

## PRELIMINARY STATEMENT

        1.    The Debtors commenced these Cases to conduct an orderly liquidation of the Debtors. Over the last several weeks the Debtors have engaged certain of their prepetition senior secured lenders in negotiations designed to address the financing necessary to preserve the value of the Debtors' business. The negotiations culminated in the negotiation of the DIP Facility. The Debtors have obtained a commitment for a $3 million credit facility from the DIP Lenders that, if approved by the Court, will fund the Debtors' during these Cases and allow the

Debtors to pursue a sale of their business or the orderly liquidation of the assets of the Debtors. The DIP Facility is a product of arm's length negotiations with the DIP Lenders yielding a DIP Facility with fair terms -- namely, the facility provides sufficient availability, competitive pricing, and an appropriate maturity date. The DIP Facility allows the Debtors to effectuate an orderly liquidation of their assets with needed liquidity through the process. The cash of the DIP Facility is critical to the Debtors' efforts to preserve the value of their business to effect a sale thereof or to liquidate their assets in a timely and orderly manner. All of this while simultaneously providing the necessary breathing spell for the Debtors to determine the best option to maximize recovery for the Debtors' creditors.

2.      The terms of the DIP Facility are reasonable and provide the Debtors with the necessary flexibility to liquidate their assets in these Cases.

3.      By this Motion, the Debtors hereby seek entry of two orders. First, the Debtors seek entry of the Interim Order in the form annexed hereto as **Exhibit A**. Second, following notice of the Motion, the Interim Order and the Final Hearing on the relief requested herein, the Debtors seek entry of the Final Order granting the relief requested herein on a final basis.[3] The entry of the Interim Order is necessary to satisfy the conditions to borrowing under the DIP Credit Agreement.

## JURISDICTION

4.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief

---

[3] A copy of the proposed Final Order will be filed at least ten (10) days prior to the Final Hearing (i.e.. three (3) days before the Objection Deadline (as defined below)).

#20437888 v3
RLF1 9287265v.1

requested herein are sections 105(a), 362, 364 and 507 of the Bankruptcy Code, Bankruptcy

Rules 2002, 4001 and 9014 and Local Rules 2002-1 and 4001-2.

## BACKGROUND

### A.    General Background

5.    On August 15, 2013 (the "**Petition Date**"), each of the Debtors filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors intend to

continue in the possession of their respective properties and the management of their respective

businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

The Debtors have requested that the Cases be consolidated for procedural purposes.

6.    The events leading up to the Petition Date and the facts and circumstances

supporting the relief requested herein are set forth in the Declaration.

### B.    Summary of Prepetition Indebtedness and Capital Structure

(i)    *Senior Secured Credit Facility*

7.    As of the Petition Date, DesignLine, as borrower, DLC, as guarantor, and

Orix Venture Finance, LLC ("**Orix**"), Cyan PI Investments, LP ("**Cyan Investments**"), Cyan

Partners, LP ("**CP**" along with Cyan Investments, the "**Cyan Entities**"), GVP Growth

Investments I, LP ("**GVP**") and the Cyrus Entities, as lenders (the "**Prepetition First Lien**

**Lenders**"), were parties to that certain Credit Agreement, dated as of November 3, 2011 (as

amended, restated, supplemented or otherwise modified prior to the Petition Date, the

"**Prepetition First Lien Credit Agreement**" and together with the other Loan Documents (as

defined in the Prepetition First Lien Credit Agreement), in each case as amended, restated,

supplemented or otherwise modified prior to the Petition Date, collectively, the "**Prepetition**

**First Lien Loan Documents**" and the credit facility contemplated therein, the "**Prepetition**

**First Lien Credit Facility**").

8.      As of the Petition Date, the aggregate outstanding Obligations (as defined

in the Prepetition First Lien Credit Agreement) arising under the Prepetition First Lien Loan

Documents was no less than $8,703,846, consisting of (i) Term Loans and (ii) accrued and

unpaid interest, costs, expenses, fees (including reimbursable attorney and other advisor fees and

expenses), other charges (in each case, to the extent reimbursable under the Prepetition First Lien

Loan Documents) and other obligations owing to the Prepetition First Lien Lenders or affiliates

thereof (all Obligations under, and as defined in the Prepetition First Lien Credit Agreement, and

any other amounts owing by the applicable Debtors under the Prepetition First Lien Loan

Documents, collectively, the "**Prepetition First Lien Indebtedness**").

9.      The Prepetition First Lien Indebtedness is guaranteed by DLC, the sole

member of DesignLine, and, except for the First Priority Specified Vehicle Lien, is secured by a

first priority security interest in substantially all of the assets of the Debtors.

(ii)      *Specified Vehicle Lien Credit Facility*

10.      As of the Petition Date, DesignLine, as borrower, DLC, as guarantor and

GVP Growth Investments III, LLC ("GVP III"), Cyan Investments and the Cyrus Entities, as

lenders (the "**Specified Vehicle Lien Lenders**") were parties to certain Security Agreements and

Master Secured Promissory Notes dated as of February 20, 2013 (as amended, restated,

supplemented or otherwise modified prior to the Petition Date, the "**Specified Vehicle Lien**

**Loan Agreements**") and together with, among other things, a certain Intercreditor Agreement

between the Specified Vehicle Lien Lenders, dated as of February 20, 2013, and a Consent dated

as of February 20, 2013) (the "**Consent**") between the Debtors and GVP, the Cyrus Entities and

the Cyan Entities (the "**Specified Vehicle Lien Loan Documents**") and the loan contemplated

thereby (the "**Specified Vehicle Lien Loans**").[4]

   11. As of the Petition Date, pursuant to the Consent, the Specified Vehicles

Lien Loans in the amount, as of the Petition Date of $19,452,036 million, are secured by a

$3,000,000 duly perfected and valid first lien and security interest on the Specified Vehicle Lien

Collateral (as defined below), senior to and over and above the priority of the Prepetition First

Lien Indebtedness (the "**First Priority Specified Vehicle Lien**"), and a duly perfected and valid

second lien and security interest on the collateral security described in the Prepetition First Lien

Credit Facility (the "**Second Priority Specified Vehicle Lien**"), consisting of (i) Term Loans,

and (ii) accrued and unpaid interest, costs, expenses, fees (including reimbursable attorney and

other advisory fees and expenses, other charges (in each case, to the extent reimbursable under

the Specified Vehicle Lien Loan Documents, and other obligations owing to the Specified

Vehicle Lien Lenders under, and as defined in the Specified Vehicle Lien Loan Documents

(collectively, the "**Specified Vehicle Lien Indebtedness** ").  As of the Petition Date, (x) the

Specified Vehicle Lien Indebtedness constitutes legal, valid and biding obligations of the

Debtors, enforceable in accordance with the terms of the applicable Specified Vehicle Lien Loan

Documents (other than in respect of the stay of enforcement arising from section 362 of the

Bankruptcy Code, (y) no setoffs, recoupments, offsets, defenses or counterclaims to any of the

Specified Vehicle Lien Indebtedness exists, and (z) no portion of the Specified Vehicle Lien

Indebtedness or any payments made to any or all of the Specified Vehicle Lien Lenders is

subject to avoidance, recharacterization, recovery, subordination, attack, setoff, counterclaim,

---

  [4] The Debtors executed a separate Security Agreement and Master Secured Promissory Note for each
Specified Vehicle Lender.

defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

**C.      The Debtors' Decision to Enter into the DIP Credit Agreement**

12.      Debtors have a contract with the State of New Jersey Transit Corporation, a public instrumentality of the State of New Jersey ("**NJT Contract**") for the manufacture and delivery of certain transit buses.  The Debtors have a substantial backlog of buses to be delivered under the contract and are owed substantial amounts under that contract.  Throughout 2012 and 2013, however, the Company has been operating on a budget that has been dependent on continued borrowing to sustain ongoing operations.

13.      In July of this year, the Company entered into a letter of intent with a prospective investor that would have provided necessary cash flow.  On July 27, 2013, the investor unexpectedly terminated its interest under the letter of intent.  The Company was unsuccessful in locating additional financing and by subsequent notice terminated its existing staff and factory workers at the beginning of August, 2013.

14.      Presently, with the exception of approximately 12 employees, the Debtor has terminated its entire workforce and has, for the most part, ceased active production operations.

15.      The Debtors have spent the past twelve months exhausting all available financing alternatives.  The Debtors are unable to obtain financing from any source other than DIP Lenders, because of their lack of (a) liquidity and (b) unencumbered assets.  The Debtors are only able to obtain post-petition financing from the DIP Lenders to facilitate a sale of their business or an orderly liquidity of their assets.

#20437888 v3
RLF1 9287265v.1

## TERMS AND CONDITIONS OF THE
## POSTPETITION FINANCING ARRANGEMENTS

**A.    Terms of the DIP Credit Agreement and Orders**

16.    The principal terms of the proposed DIP Facility, including the provisions

of the DIP Credit Agreement and Interim Order are set forth below in accordance with

Bankruptcy Rule 4001(c) and Local Rule 4001-(2)(a)(ii).[5]  The material provisions addressed

below were negotiated in good faith by the parties and the DIP Lenders have indicated that they

are necessary for the Debtors to procure the financing made available under the DIP Credit

Agreement in a sufficient amount and on a timely basis.

| | |
|---|---|
| Borrowers:<br><br>Bankruptcy Rule 4001(c)(1)(B) | The Debtors |
| Lenders: | Cyrus Entities and any other Prepetition First Lien Lenders which elect to participate in the DIP Facility. The DIP Facility shall be pro-rata to the outstanding indebtedness owed under the Prepetition First Lien Credit Facility on the Petition Date. |
| DIP Facility/Borrowing Limits:<br><br>Bankruptcy Rule 4001(c)(1)(B) | $3 million senior secured, super-priority, multiple draw term credit facility, subject to the First Priority Specified Vehicle Lien, of which $375,000.00 shall be available upon the entry of the Interim Order. |
| Interest:<br><br>DIP Credit Agreement § 2.6(b)(a)<br><br>Bankruptcy Rule 4001(c)(1)(B) | DIP Loans will bear interest of 7%. |
| Default Interest: | An additional 2.00% per annum on any overdue principal and/or interest |

---

[5] This summary is qualified in its entirety by reference to the provisions of the DIP Loan Documents.  The DIP Loan Documents will control in the event of any inconsistency between this motion and the DIP Loan Documents.  Unless otherwise defined herein, capitalized terms used in this section have the meanings ascribed to them in the DIP Loan Documents.

#20437888 v3
RLF1 9287265v.1

| | |
|---|---|
| DIP Credit Agreement § 2.6(b)<br><br>Bankruptcy Rule 4001(c)(1)(B) | |
| Work Fee:<br><br>DIP Credit Agreement § 2.5 | $100,000 payable to the Cyrus Entities, fully earned and non-refundable at the time of the entry of the Interim Order, and payable upon the entry of the Final Order. |
| Maturity:<br><br>Dip Credit Agreement p. 6<br><br>Bankruptcy Rule 4001(c)(1)(B) | The earliest of (i) the Term Date, (ii) the effective date of any chapter 11 plan of the Debtors, (iii) the date that is fourteen (14) days after the Interim Order Entry Date if the Final Order Entry Date shall not have occurred by such date and (iv) the date of acceleration of the DIP Loan and termination of the Borrowings under the DIP Credit Agreement (including, without limitation, as a result of the occurrence of any Event of Default). |
| Events of Default:<br><br>DIP Credit Agreement Article VII<br><br>Interim Order ¶13<br><br>Bankruptcy Rule 4001(c)(1)(B) | Usual and customary events of default, including but not limited to:<br><br>Default in payment of principal or interest of any DIP Loan;<br><br>Any representation or warranty made by the Debtors shall prove to have been incorrect in any material respect when made or deemed made;<br><br>Events of default related to the failure to observe or perform certain covenants, conditions or agreements contained in the DIP Loan Documents, including, without limitation, covenants to use proceeds of the DIP Loans in accordance with the Budget, meet minimum financial metrics and comply with case milestones;<br><br>Any Lien purported to be created under any Security Document shall cease to be, or shall be asserted by any Debtor not to be, a valid perfected Lien on any Collateral required by the applicable Security Document;<br><br>Events of default relating to events in the Cases (including, without limitation, dismissal of any of the Cases, appointment of a trustee or an examiner with expanded powers, or any motion seeking such appointment is filed by a Debtor, conversion of any of the Cases to a chapter 7 case, the filing of any chapter 11 plan, or the entry of an order approving any such chapter |

| | |
|---|---|
| | 11 plan that is not acceptable to the DIP Lenders, or any termination or modification of the exclusivity periods); and<br><br>The commencement of any action against any DIP Lender, the Prepetition First Lien Lenders or the Specified Vehicle Lien Lenders by or on behalf of any Debtor or its officers or employees. |
| Borrowing Conditions/ Conditions Precedent:<br><br>DIP Credit Agreement § 2.1, 4.1, 5.8<br><br>Bankruptcy Rule 4001(c)(1)(B) | Closing and the initial funding under the DIP Facility will be subject to the satisfaction of usual and customary conditions precedent, including but not limited to:<br><br>Execution and delivery of the DIP Loan Documents;<br><br>The DIP Lenders shall have received all fees and other amounts contemplated by the DIP Loan Documents due and payable to the DIP Lenders on or prior to the Effective Date;<br><br>Certificates of insurance, including without limitation, flood insurance policies, shall be delivered to the Lenders evidencing the existence of insurance to be maintained by the Debtors pursuant to § 5.6 of the DIP Credit Agreement;<br><br>The DIP Lenders shall have received (i) the Budget, (ii) duly executed copies of all engagement letters and/or work letters for each of its financial advisors and/or legal counsels and (iv) such additional information (financial or otherwise) reasonably requested by the Lenders, any such item set forth herein to be in form and substance satisfactory to the Lenders;<br><br>No Default or Event of Default shall exist or would result from the extension of the DIP Loans on the Effective Date;<br><br>The representations and warranties set forth in Article III of the DIP Credit Agreement shall be true and correct on and as of the Effective Date;<br><br>The Lenders shall have received, prior to the entry of the Final Order, all documentation and other information about the Debtors as shall have been reasonably requested by the Lenders under applicable "know your |

|  | customer" and anti-money laundering rules and regulations, including without limitation the USA Patriot Act;<br><br>Entry by the Court of the Interim Order in form and substance reasonably satisfactory to the DIP Lenders;<br><br>The Interim Order shall not have been reversed, modified, amended, stayed or vacated, in the case of any modification or amendment, in a manner, or relating to a matter, without the consent of the DIP Lenders;<br><br>The Debtors shall be in compliance in all respects with the Interim Order;<br><br>No trustee or examiner shall have been appointed with respect to the Debtors or their respective properties |
| --- | --- |
| Grant of Priority or Lien on Property of Estate under section 364(c) or (d)<br><br>Interim Order, ¶2(d); (h)<br><br>Bankruptcy Rule 4001(c)(l)(B)(i) | The DIP Lenders are granted a lien and security interest in the following property of the Debtors:  the cash collateral account and all monies, securities, Instruments and other investments deposited or required to be deposited in the cash collateral account; all Chattel Paper (including, without limitation, all Tangible Chattel Paper and all Electronic Chattel Paper); all Commercial Tort Claims; all computer programs of the Debtors and all intellectual property rights therein and all other proprietary information of the Debtors, including but not limited to Domain Names and Trade Secret Rights; Contracts, together with all Contract Rights arising thereunder; all Copyrights; all Equipment; all Deposit Accounts and all other demand, deposit, time savings, cash management, passbook and similar accounts maintained by the Debtors with a Person and all monies, securities, Instruments and other investments deposited or required to be deposited in any of the foregoing; all Documents; all General Intangibles; all Goods; all Instruments; all Inventory; all Investment Property; all Letter-of-Credit Rights (whether or not the respective letter of credit is evidenced by a writing); all Marks, together with the registrations and right to all renewals, thereof for infringement of any of the Marks of unfair competition regarding the name; all Patents, together with all causes of action, arising prior to or after the date hereof for infringement of any of the Patents or unfair competition regarding the same; all Permits; all Software |

#20437888 v3<br>RLF1 9287265v.1

and all Software licensing rights, all writings, plans, specifications and schematics, all engineering, drawings, customer lists, goodwill and licenses, and all recorded data of any kind or nature, regardless of the medium of recording; all Supporting Obligations all other personal property; and all Proceeds and products of any and all of the foregoing (all of the foregoing collateral collectively referred to as the "DIP Collateral," and all such Liens granted to the DIP Lenders for the ratable benefit of the DIP Lenders in respect of the Secured Obligations (the "DIP Liens");

(I)    pursuant to the section 364(c)(2) of the Bankruptcy Code; a perfected, binding, continuing, enforceable, non-avoidance, first priority Lien on all proceeds of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law ("Avoidance Actions") (subject to entry of the Final Order), whether received by judgment, settlement, or otherwise.

(II)    pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior Lien upon all the First Priority Specified Vehicle Lien Collateral that is subject to valid, enforceable, non-avoidable and perfected Liens in existence on the Petition Date that, after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition First Liens, (subject to such exception, the "Prepetition Senior Liens"); and

(III)    pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming Lien on all DIP Collateral that is senior to (x) the existing Prepetition First Liens in favor of the Prepetition First Lien Secured Parties and securing the Prepetition First Lien Indebtedness (including all Obligations as defined in the Prepetition First Lien Loan Documents), and Second Priority Specified Vehicle Lien in favor of the Specified Vehicle Lenders and securing such Specified Vehicle Indebtedness and (x) and (y), collectively, the "Primed Liens"), which Primed Liens, shall be primed by and made subject and subordinate to (u) the First Priority Specified Vehicle Lien and (v) the perfected first priority senior priming DIP Liens.

-13-

| | |
|---|---|
| | All DIP Loans and other obligations of the Borrowers owed to the DIP Lenders shall have superpriority administrative expense status pursuant to Section 364(c)(1) of the Bankruptcy Code (the "DIP Superpriority Claims"), with priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 of the Bankruptcy Code, subject and subordinate only to the First Priority Specified Vehicle Lien. |
| Adequate Protection or Priority for Prepetition Claims<br><br>Bankruptcy Rule 4001(c)(1)(B)(ii) | There is no such provision. |
| Determination of Validity, Enforceability, and Priority of Prepetition Lien<br><br>Interim Order, ¶¶D(iv); E(iv).<br><br>Bankruptcy Rule 4001(c)(1)(B)(iii) | Each Debtor and its estate shall be deemed to have waived, discharged …. any right or basis to challenge or object to the amount, validity or enforceability of the Prepetition First Lien Indebtedness or Specified Vehicle Lien Indebtedness, or the validity, enforceability, priority or non-avoidability of the Prepetition First Liens securing the Prepetition First Lien Indebtedness or the Specified Vehicle Liens securing the Specified Vehicle Lien Indebtedness. |
| Waiver of Automatic Stay<br><br>Interim Order, ¶13.<br><br>Bankruptcy Rule 4001(c)(1)(B)(iv) | Upon the occurrence of an event of default, the automatic stay shall be modified to the extent necessary, without requiring prior notice to or authorization of, this Court, to permit the DIP Lenders to exercise all rights and remedies under the Interim Order, and the DIP Loan Documents, underlined provided, with respect to all rights and remedies against the DIP Collateral provided for in any DIP Loan Documents, or applicable law, the Debtors shall receive five (5) business days' prior written notice, during which time the Debtors and any Committee shall be entitled to an emergency hearing before this Court. Subject to any order of the Court that is entered during such five (5) business-day period, the automatic stay, as to the DIP Lenders, shall automatically terminate at the end of such notice period. |
| Wavier of Right to File Plan, Seek Extension of Time to File Plan, Request Use of Cash Collateral or | The Interim Order must be entered within three (3) Business Days of the filing of the Motion; |

#20437888 v3<br>RLF1 9287265v.1

| | |
|---|---|
| Request Authority to Obtain Credit under Section 364 of the Bankruptcy Code<br><br>Deadlines for Filing Plan, Approval of Disclosure Statement, Plan Confirmation<br><br>Bankruptcy Rules 4001(c)(1)(B)(v); (vi) | A fully executed letter of intent from a stalking horse bidder, acceptable to the DIP Lenders in form and substance as to the potential purchaser and the terms and conditions, is received by the Debtors no later than September 6, 2013.<br><br>A fully executed asset purchase agreement, acceptable to the DIP Lenders in form and substance as to the terms and conditions contained therein, received by the Debtors no later than September 20, 2014.<br><br>The entry by the Bankruptcy Court of a Sales procedure Order, acceptable to the DIP Lenders, in form and substance, no later than September 26, 2013.<br><br>An auction by the Debtors for the sale of their assets to be held no later than October 17, 2013.<br><br>The entry of an order by the Bankruptcy Court approving the sale of the Debtor's assets no later than October 21, 2013.<br><br>The closing on the sale(s) of the Debtors' assets no later than  October 28, 2013.<br><br>Filing of a disclosure statement  (the "Disclosure Statement") pursuant to section 1125 of the Bankruptcy Code in respect of a chapter 11 plan for all Debtors (the "Plan") on or prior to  November 4, 2013;<br><br>The Bankruptcy Court shall have entered an order approving the Disclosure  Statement  on or before December 6, 2013;<br><br>The Bankruptcy Court shall have entered an order confirming the Plan on or prior to January 6, 2014;<br><br>The Confirmation Order shall have become final and non-appealable on or prior to  January 20, 2014; and<br><br>The effective date of the Plan shall have occurred on or prior to January 20, 2014, if the milestone directly above shall have been waived, or February 3, 2014 if such milestone is not waived. |
| Waiver or Modification of | No such provision. |

| | |
|---|---|
| Applicability of Non-Bankruptcy Law Relating to Prepetition Lien or Foreclosure<br><br>Bankruptcy Rule 4001(c)(1)(B)(vii) | |
| Release, Waiver or Limitation on Claim or Cause of Action by the Debtors<br><br>Interim Order, ¶¶D(iv), E(iv)<br><br>Bankruptcy Rule 4001(c)(1)(B)(viii) | Pursuant to the Interim Order, each Debtor and its estate shall be deemed to have waived, discharged and released each DIP Lender and each DIP Lender in its capacity as a Prepetition First Lien Secured Lender and Specified Vehicle Lender, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors and employees (all of the foregoing, the "Prepetition First Lien Lender Releasees") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment or other offset rights against any and all of the Releasees, whether arising at law or in equity, including, without limitation, (I) any recharacterization, subordination, avoidance or other claim arising under or pursuant to the Bankruptcy Code or under any other similar provisions of applicable state or federal law, and (II) any right or basis to challenge or object to the amount, validity or enforceability of the (i) DIP Liens or the liens of the DIP Lenders in their capacity as (a) Prepetition First Lien Lender with respect to the Prepetition First Lien Indebtedness, or (b) a Specified Vehicle Lien Lender with respect to the Specified Vehicle Lien Indebtedness. |
| Indemnification of any Entity<br><br>Credit Agreement, §8.3(b)<br><br>Bankruptcy Rule 4001(c)(1)(B)(ix) | The Borrowers shall indemnify each DIP Lender (each such Person being called an "Indemnitee") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities and reasonable and documented or invoiced out-of-pocket fees and expenses of any counsel for any Indemnitee, incurred by or asserted against any Indemnitee by any third party or by the Borrowers, arising out of, in connection with, or as a result of (i) the execution or delivery of the DIP Credit Agreement, any DIP Loan Document or any other agreement or instrument contemplated thereby, the performance by the parties to the DIP Loan Documents of their respective obligations thereunder or the consummation of any transactions contemplated thereby, (ii) any Loan or the use of the proceeds therefrom, (iii) to the extent in any way arising from or relating to any of the foregoing, any actual or alleged presence or release or |

| | |
|---|---|
| | threat of release of Hazardous Materials on, at, to or from any property currently or formerly owned or operated by the Debtors or any other Environmental Claims related in any way to the Debtors, or (iv) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third party or by the Debtors and regardless of whether any Indemnitee is a party thereto; provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities, costs or related expenses resulted from the gross negligence, bad faith or willful misconduct of such Indemnitee (as determined by a court of competent jurisdiction in a final and non-appealable judgment). |
| Release, Waiver or Limitation on 506(c) Rights<br><br>Interim Order, ¶8.<br><br>Bankruptcy Rule 4001(c)(1)(B)(x) | Subject to entry of the Final Order, as a further condition of the DIP Facility obligation of the DIP Lenders to make credit extensions pursuant to the DIP Loan Documents, except as provided in the Budget, no costs or expenses of administration of the Cases or any Successor Case shall be charged against or recovered from or against any or all of the DIP Lenders, the Prepetition First Lien Lenders, the Specified Vehicle Lien Lenders, the DIP Collateral, the Prepetition First Lien Collateral and the Specified Vehicle Lien Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lenders, the Prepetition First Lien Lenders or the Specified Vehicle Lien Lenders, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Lenders, the Prepetition First Lien Lenders or the Specified Vehicle Lien Lenders. |
| Lien on Actions under sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)<br><br>Interim Order ¶2(d)(1)<br><br>Bankruptcy Rule 4001(c)(1)(B)(xi) | Subject to entry of the Final Order, the DIP Liens include a perfected, binding, continuing, enforceable, non-avoidance, first priority Lien on all proceeds of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (**"Avoidance Actions"**). |

#20437888 v3<br>RLF1 9287265v.1

**B.**     **Provisions that Potentially Implicate Local Rule 4001-2(a)(i)**

17.     The applicable provisions of the DIP Facility, including the provisions of

the DIP Credit Agreement and Interim Order, required to be highlighted pursuant to Local Rule

4001-2 are set forth as follows:

| | |
|---|---|
| Disclosure of provisions that grant cross-collateralization protection:<br><br>Interim Order ¶2<br><br>Local Rule 4001-2(a)(i)(A) | There is no such provision.<br><br>Cross collateralization provisions allowing, subject to the detailed prerequisites, post petition liens securing prepetition indebtedness. |
| Disclosure of provisions or findings of fact that bind the estate with respect to validity, amount or perfection of liens or a waiver of claims, without first giving certain parties in interest an opportunity to conduct an investigation:<br><br>Local Rule 4001-2(a)(i)(B) | There is no such provision.<br><br>The Debtors' Stipulations shall be binding upon each other party in interest, including any Committee, unless such party in interest, including any Committee, obtains the requisite standing to commence, and commences, by (x) with respect to any Committee, 60 days after the initial appointment of the Committee, and (y) with respect to any other party in interest, 75 days after the date of entry of the Interim Order.  See Interim Order ¶6. |
| Disclosure of provisions that seek to waive, without notice, whatever rights the estate may have under section 506(c) of the Bankruptcy Code:<br><br>Local Rule 4001-2(a)(i)(C) | The Debtors are seeking a waiver of rights under section 506(c), subject to entry of a Final Order.  See Interim Order ¶8. |
| Disclosure of provisions that immediately grant the prepetition secured creditor liens on avoidance actions:<br><br>Local Rule 4001-2(a)(i)(D) | Subject to entry of the Final Order, the DIP Liens include a perfected, binding, continuing, enforceable, non-avoidance, first priority Lien on all proceeds of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law ("**Avoidance Actions**").  See Interim Order ¶2(d)(1). |
| Disclosure of provisions that use post-petition loans to repay | There is no such provision. |

#20437888 v3<br>RLF1 9287265v.1

| | |
|---|---|
| prepition debt:<br><br>Local Rule 4001-2(a)(i)(E) | |
| Disclosure of provisions that provide disparate treatment to professionals retained by the creditors committee from professionals retained by the Debtors:<br><br>Local Rule 4001-2(a)(i)(F) | There is no such provision. |
| Disclosure of provisions that prime any secured liens without the consent of the lienholder:<br><br>Local Rule 4001-2(a)(i)(G) | The Interim Order grants the DIP Lenders a perfected first priority, senior priming Lien on all DIP Collateral that is senior to (x) the existing Prepetition First Liens in favor of the Prepetition First Lien Lenders and securing the Prepetition First Lien Indebtedness (including all Obligations as defined in the Prepetition First Lien Loan Documents), and Second Priority Specified Vehicle Lien in favor of the Specified Vehicle Lien Lenders and securing such Specified Vehicle Indebtedness and (x) and (y), collectively, the "**Primed Liens**"), which Primed Liens, shall be primed by and made subject and subordinate to (u) the First Priority Specified Vehicle Lien and (v) the perfected first priority senior priming DIP Liens. <u>See</u> Interim Order ¶2(d)(III). |
| Disclosure of any provision that seek to affect the Court's power to consider the equities of the case under section 552(b)(1) of the Bankruptcy Code:<br><br>Local Rule 4001-2(a)(i)(H) | The Interim Order provides that the DIP Lenders, the Prepetition First Lien Lenders and the Specified Vehicle Lien Lenders are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply. <u>See</u> Interim Order ¶H. |

18.    The justification for provisions described above and included in the

Interim Order is the immediate and critical need for the Debtors' obtain post-petition financing

from the DIP Lenders to facilitate a sale of their business or an orderly liquidity of their assets.

As discussed above, the Debtors have no unencumbered funds or access to surplus liquidity.

These provisions are essential to obtaining the approval of the DIP Lenders.  Accordingly, the

#20437888 v3<br>RLF1 9287265v.1

Debtors respectfully submit that above-described provisions are necessary and appropriate and should be authorized and approved by this Court.

## BASIS FOR RELIEF

**A.      The DIP Credit Agreement Should Be Approved Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code.**

19.      The Debtors propose to obtain financing under the DIP Credit Agreement by providing security interests and liens as set forth above pursuant to sections 364(c) and 364(d) of the Bankruptcy Code.  Bankruptcy Code section 364(c) provides:

> If the [debtor in possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt -
>
> (1)  with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2)  secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3)  secured by a junior lien on property of the estate that is subject to a lien.
>
> 11 U.S.C. § 364(c).

Bankruptcy Code section 364(d)(1) provides:

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if -
>
> (A)  the [debtor in possession] is unable to obtain such credit otherwise; and
>
> (B)  there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
>
> 11 U.S.C. § 364(d).

Bankruptcy Rule 4001(c)(2) provides, in relevant part:

#20437888 v3
RLF1 9287265v.1

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R Bankr. P. 4001(c)(2).

20.     The DIP Credit Agreement satisfies applicable standards for approval under sections 364(c) and 364(d) of the Bankruptcy Code. Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts look to whether: (a) the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim; (b) the credit transaction is necessary to preserve the assets of the estate; and (c) the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender. In re Ames Dep't Stores. Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); In re The Crouse Group. Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

21.     A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by section 364(c) of the Bankruptcy Code. See In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1986): see also In re Plabell Rubber Prods.. Inc., 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). As stated above and detailed in the Goodman Declaration, the Debtors have ceased operations, have no liquidity and no unencumbered assets.

22.     The financing provided under the terms of the DIP Facility was the only feasible postpetition financing available to the Debtors. Thus, the Debtors submit that the requirement of section 364(c) of the Bankruptcy Code that alternative credit on more favorable terms was unavailable to the Debtors is satisfied.

#20437888 v3
RLF1 9287265v.1

23.    The financing provided under the DIP Credit Agreement is necessary to preserve the assets of the Debtors' estates, because it provides the Debtors with the liquidity necessary to continue to sell their business or facilitate the orderly liquidation of their assets.

24.    Finally, the Debtors negotiated the DIP Credit Agreement at arm's length and have determined, in the exercise of their sound business judgment, that it is the best proposal under the circumstances and that its terms are fair and reasonable.  The Debtors believe that the terms of the DIP Facility, including the pricing, fees, term, and milestones are competitive based on the current market for debtor-in-possession financing.

25.    Except with respect to the First Priority Specified Vehicle Lien, the DIP Facility includes priming liens on all DIP Collateral for the benefit of the DIP Lenders, and therefore is subject to approval under section 364(d) of the Bankruptcy Code as well.  Section 364(d)(1) of the Bankruptcy Code authorizes a debtor-in-possession to incur superpriority senior secured priming liens if:  (a) the debtor is unable to obtain such credit otherwise, and (b) the interests of the secured creditors whose liens are being primed by the post-petition financing are adequately protected.  See 11 U.S.C. §§ 364(d)(1).  As described above, the Debtors are unable to obtain viable financing on terms more favorable than the DIP Facility.

26.    The Debtors have submitted to the First Prepetition Lien Lenders and the Specified Vehicle Lien Lenders, a term sheet proposing for the DIP Loan prime the interests of the First Prepetition Collateral and Liens and the Second Priority Specified Vehicle Collateral and Liens, and as of the date of the filing of this Motion, no Lender has objected to the priming.

27.    Without the DIP Loan, there are no funds or cash to liquidate the Debtors.

#20437888 v3
RLF1 9287265v.1

28.    Based upon the foregoing, the Debtors request that the Court authorize the Debtors to use the Cash Collateral in accordance with the terms set forth in the Interim Order and the DIP Credit Agreement.

**B.    The DIP Lenders are Entitled to the Protections of Section 364(e) of the Bankruptcy Code.**

29.    Section 364(c) of the Bankruptcy Code provides that the "reversal or modification on appeal of an authorization ... to obtain credit or incur debt... does not affect the validity of any debt so incurred or any priority or lien so granted, to an entity that extended such credit in good faith." 11 U.S.C. § 364(c). As previously discussed herein, the DIP Loan Documents are the product of extensive arm's length, good faith negotiations between the Debtors and the DIP Lenders. Moreover, the terms and conditions of the DIP Facility are fair and reasonable, and the Debtors' entry into the DIP Loan Documents is in the best interests of their estates and creditors. Accordingly, the Debtors respectfully submit that the Court should find that the DIP Lenders are "good faith" lenders within the meaning of section 364(e) of the Bankruptcy Code, and are entitled to all of the protections afforded by that section.

**C.    The Section 506(c) Waiver in the Final Order Should Be Approved.**

30.    Under the DIP Facility, except as provided in the Budget, the Debtors agree to waive any rights to charge costs and expenses against the DIP Collateral, Prepetition First Lien Collateral or the Specified Vehicle Collateral. The Debtors request that the Court approve the waiver, upon entry of the Final Order. Such waivers and provisions are standard under financings between sophisticated parties. As one court noted, "the Trustee and Debtors-in-Possession in this case had significant interests in asserting claims under § 506(c) and have made use of their rights against the Lender under § 506(c) by waiving them in exchange for concessions to the estates (including a substantial carve-out for the benefit of administrative

-23-

creditors)." In re Molten Metal Technology, Inc., 244 B.R. 515, 527 (Bankr. D. Mass. 2000).

See also In re Nutri/System of Florida Assocs., 178 B.R 645, 650 (E.D. Pa. 1995) (noting that

debtor had waived § 506(c) rights in obtaining debtor in possession financing); In re Telesphere

Communications. Inc., 179 B.R 544, 549 (Bank. N.D. 111. 1994) (approving settlement between

debtor and certain lenders wherein debtor waived certain rights (including 506(c) rights) against

the lenders in exchange for valuable consideration).

**D.      Modification of Automatic Stay.**

31.      The proposed DIP Agreement and Interim Order contemplate the

modification of the automatic stay to the extent necessary to permit the Debtors and the DIP

Lenders to take all actions necessary to implement the DIP Agreement and the Interim Order.

However, the DIP Lenders will provide five (5) business days' notice to the Debtors, U.S.

Trustee and the respective lead counsel to any statutory committee of unsecured creditors after

an event of default but before enforcing remedies under the DIP Loan Documents.

32.      Stay modification provisions of this type are customary components of

postpetition debtor-in-possession financing facilities and, in the Debtors' business judgment, are

reasonable under the circumstances.  The provision provides the Debtors and other parties

reasonable time to cure an event of default if possible and entitles the Debtors and any committee

to an emergency hearing before this Court.  Accordingly, the Debtors request that the Court

authorize the modification of the automatic stay in accordance with the terms set forth in the

Interim Order.

**E.      Interim Approval Should Be Granted**

33.      Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a

motion to obtain credit pursuant to section 364 of the Bankruptcy Code or to use cash collateral

pursuant to section 363 may not be commenced earlier than fourteen (14) days after the service

of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

34.    The Debtors request that the Court hold and conduct a preliminary hearing on the DIP Motion to consider entry of the Interim Order authorizing the Debtors from and after entry of the Interim Order until the Final Hearing to borrow an amount sufficient to fund the Debtors, as reflected in the Budget. This relief will enable the Debtors to maximize value, and, therefore, to avoid immediate and irreparable harm and prejudice to their estates and all parties in interest, pending the Final Hearing.

**F.    Notice Procedures and the Final Hearing**

35.    Pursuant to Local Rule 4001-2(c), the Final Order may only be entered after notice and a hearing and the Debtors may not schedule a hearing to consider the Final Order until at least seven (7) days after the organizational meeting of the Official Committee of Unsecured Creditors ("**Creditors' Committee**") contemplated by section 1102 of the Bankruptcy Code. The Debtors shall, within three (3) business days of the entry of the Interim Order by the Court, serve by overnight mail on (a) the U.S. Trustee, (b) the DIP Lenders, (c) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, (d) the Internal Revenue Service, (e) all appropriate state taxing authorities, and (f) any other party that files a request for notices with the Court as of the date of such service (collectively, the "**Noticed Parties**"), a copy of the Interim Order and a notice of the Final Hearing (the "**Final Hearing Notice**") to consider entry of the Final Order on the date established by the Court. The Final Hearing Notice will also inform recipients that any party in interest objecting to the relief sought at the Final Hearing will be required to serve and file an objection, which objection shall: (i) be in writing: (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk

-25-

of the United States Bankruptcy Court for the District of Delaware by no later than 4 p.m. on the day that is not less than seven (7) calendar days before the Final Hearing (the "**Objection Deadline**"); and (iv) be served upon the following parties so as to be received by the Objection Deadline:  (a) the U.S. Trustee: 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801; (b) co-counsel for the Debtors: Nelson Mullins Riley & Scarborough LLP, One Post Office Square, 30th Floor, Boston, MA 02109 (Attn: Peter J. Haley); Richards Layton & Finger, P.A., P.O. Box 551, One Rodney Square, Wilmington, DE 19899 (Attn: Mark Collins); (c) counsel to the DIP Lenders:  Pepper Hamilton LLP, Hercules Plaza, Suite 5100,1313 N. Market Street, Wilmington, DE 19899 (Attn: David B. Stratton, Esq.) and 4000 Town Center, Suite 1800, Southfield, MI 48075 (Attn: Kay S. Kress); and (d) counsel to the Creditors' Committee appointed in these cases.

36. The Debtors respectfully request that the Court schedule the Final Hearing on this Motion no later than fourteen (14) days after the date of entry of the Interim Order.  Such relief is necessary in order to maintain the value of the Debtors' assets and avoid immediate and irreparable harm and prejudice to the Debtors' respective estates.

## NOTICE

37. Notice of this Motion will be given to the Noticed Parties.  The Debtors submit that, under the circumstances, such service satisfies Local Rule 9013-1(m) and no other or further notice is required.

38. No previous motion for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE the Debtors respectfully request: (i) entry of an order substantially in the form of the proposed Interim Order annexed hereto as **Exhibit A**; (ii) after the Final Hearing, entry of the Final Order substantially in the form that shall be filed with the Court; and (iii) such other and further relief as may be just or proper.

Dated:  August 27, 2013
       Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

- and -

Peter J. Haley
NELSON MULLINS RILEY & SCARBOROUGH LLP
One Post Office Square, 30th Floor
Boston, Massachusetts 02109
Telephone:  (617) 573-4714
Facsimile:  (617) 573-4750

*Proposed Attorneys to the Debtors and Debtors in Possession*

#20437888 v3
RLF1 9287265v.1