## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DESIGNLINE CORPORATION, *et al.* | : | Case No. 13-12089 (MFW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION OF CAMERON HARRIS TO TRANSFER VENUE OF THESE CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA, CHARLOTTE DIVISION

The Official Committee of Unsecured Creditors (the "Committee") of the bankruptcy estates of above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned proposed counsel, hereby (i) Objects to the Motion of Cameron Harris To Transfer Venue of These Cases to the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Divisions [D.I. 20] (the "Transfer Motion"), and (ii) joins in all other objections of record to the Transfer Motion.  In support of this objection, the Committee states as follows:

### BACKGROUND

1.      On August 15, 2013, the Debtors filed petitions for bankruptcy under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.  Since the Petition Date, the Debtors have operated their businesses and managed their property as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

2.      On the Petition Date, the Debtors filed (i) a Motion for Order Directing Joint Administration of Related Chapter 11 Cases, (*see* D.I. 3), and (ii) an Application for Order

Appointing Rust Consulting/OMNI Bankruptcy as Claims and Noticing Agent Pursuant to 28 U.S.C. § 156(c) and Section 105(a) of the Bankruptcy Code *Nunc Pro Tunc* to the Petition Date. (*See* D.I. 14.)   The Court granted these motions on August 29, 2013.   (*See* D.I. 33 and 34, respectively.)

3.       The Debtors annexed to their petitions the following:  (i) a list of all creditors of DesignLine Corporation (the "DesignLine Corporation Creditor List"), (ii) a list of all creditors of DesignLine USA, LLC (the "DesignLine USA Creditor List"), and (iii) a consolidated list of the Debtors' top twenty creditors (the "Top Twenty Creditor List").  (*See* D.I. 1.)   For the convenience of the Court, a true and correct copy each of the DesignLine Corporation Creditor List, the DesignLine USA Creditor List, and Top Twenty Creditor List are annexed hereto as **Exhibits A**, **B**, and **C**, respectively.

4.       The DesignLine Corporation Creditor List identified sixteen (16) creditors, fourteen (14) of whom — or nearly ninety percent (90%) — are not located in North Carolina. Most of the creditors identified on the DesignLine Corporation Creditor List are located in New York, New York and southeastern Pennsylvania.

5.       The DesignLine USA Creditor List identified 226 creditors, 158 of whom — or seventy percent (70%) — are not located in North Carolina.

6.       The Top Twenty Creditor List identified fourteen (14) creditors — or seventy percent (70%) — that are not located in North Carolina.

7.       On August 27, 2013, the Debtors filed a motion to obtain debtor-in-possession financing.  (*See* D.I. 15 [Motion For (I) Interim and Final Orders Authorizing Debtors To Obtain Post-Petition, Secured Financing Pursuant to 11 U.S.C. §§ 105, 362, 364(C)(1), 362(C) 2,

364(C)(3), 364(D)(1) and 364(E), and (II) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)] (the "DIP Motion").

8.      Also on August 27, 2013, the Office of the United States Trustee convened a creditors' committee formation meeting.

9.      Mr. Harris did not appear personally at the formation meeting.  He appeared through a proxy held by his counsel.

10.     The Office of the United States Trustee concluded the formation meeting on August 27, 2013 and appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee is comprised of the following creditors: (i) Princess Cathcart and Frank Thompson; (ii) Cameron Harris (the Movant); (iii) Carnes-Miller Gear Co., Inc.; (iv) The Punaro Group, LLC; and (v) TriMark Corporation.  (*See* D.I. 12 [Notice of Appointment of Creditors Committee].)  Also on August 27, 2013, the Committee selected Benesch, Friedlander, Coplan & Aronoff LLP as its counsel, subject to Court approval pursuant to sections 327 and 328 of the Bankruptcy Code.

11.     On August 28, 2013, the Committee held a meeting via telephonic conference call.  (*See* Affidavit of General Arnold Punaro (Ret.) (the "Punaro Affidavit"), a true and correct copy of which is annexed hereto as **Exhibit D** and incorporated herein by reference in its entirety, ¶ 2.)  At this meeting, General Punaro was elected chair of the Committee.  (Punaro Affidavit, ¶ 2.)

12.     The Transfer Motion was filed during the course of this telephonic meeting. (Punaro Affidavit, ¶ 3.)  The Transfer Motion seeks to transfer the venue of these bankruptcy cases to the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division (the "North Carolina Bankruptcy Court").  Given Mr. Harris' request for expedited

3

consideration, the Committee deliberated the Transfer Motion during this meeting and voted to oppose it.  (Punaro Affidavit, ¶ 4.)

13.     Mr. Harris did not personally participate in this meeting.  (Punaro Affidavit, ¶ 5.) Mr. Harris' counsel participated in this meeting on behalf of Mr. Harris.  (*Id.*)

14.     On August 29, 2013, the Court held a hearing on the DIP Motion, but adjourned it to September 4, 2013 to allow the parties to address the Transfer Motion.

15.     On August 30, 2013, the Committee convened a second conference call to discuss the Transfer Motion.  (Punaro Affidavit. ¶ 6.)

16.     Again, Mr. Harris did not personally participate in this telephonic conference call. (Punaro Affidavit, ¶ 7.)  Instead, Mr. Harris had his counsel participate.  (Punaro Affidavit, ¶ 7.)

17.     After full deliberation, through which Mr. Harris' counsel and others were invited to (and did) express their views relating to the Transfer Motion, the Committee again voted in favor of maintaining venue before this Court. (*See* Punaro Affidavit, ¶ 8.)

18.     The Committee believes that Delaware is the most appropriate venue for these Bankruptcy Cases for several reasons.  First, most of the unsecured creditors are located outside of North Carolina.  (Punaro Affidavit, ¶ 10.)  Second, all of the lenders in this case are located outside of North Carolina.  (*Id.*)  Third, the Committee views the lenders' commitment to finance these bankruptcy cases as necessary for there to be any recovery to general unsecured creditors.  (*Id.*)  Without such a commitment, the Committee believes there will be no recovery for unsecured creditors.  (*Id.*)  While the lenders have committed to funding these bankruptcy cases in a Delaware venue, they have not committed to financing these bankruptcy cases outside of a Delaware forum.  (*Id.*)  Finally, the Committee is aware of no assets of considerable value that are located in North Carolina.  (*Id.*)  As a former board member, General Punaro is very

familiar with the company and knows firsthand that the physical plant and other aspects of the North Carolina location will be unattractive to any buyer. (*Id.*) It is the Committee's understanding that the value of the Debtors' assets derive from the Debtors' intellectual property, which has no situs. (*Id.*)

19. In addition, the Committee Chair intends to participate actively in this case. (Punaro Affidavit, ¶ 11.) General Punaro lives and works in McLean, Virginia, a Washington, D.C. suburb located in Northern Virginia. (*Id.*) Wilmington, Delaware is accessible within an approximately one hour train ride whereas Charlotte, North Carolina is not.[1] (*Id.*)

## ARGUMENT

20. The law requires substantial deference be given to a debtor's choice of venue in bankruptcy cases and the creditors committee's preferences relating thereto. Mr. Harris has not overcome that deference. In short, Mr. Harris believes that venue should be changed to the

---

[1] General Punaro desired (and desires) to offer live testimony in support of the Committee's objection to the Transfer Motion, but has commitments on September 4, 2013 or September 5, 2013. (Punaro Affidavit, ¶ 12.) He is able and willing to testify on September 6, 2013. (*Id.*) Specifically, General Punaro serves as Chairman of the Secretary of Defense's Reserve Forces Policy Board (the "Board"), which has its quarterly and annual meeting on September 4 and 5, 2013. (Punaro Affidavit, ¶ 13.) The Board reports directly to the Secretary of Defense and has meeting dates publicly filed in the Federal Register. (*Id.*) This meeting date was established one year in advance. (*Id.*) Personnel from all points around the country will participate in the Board's meeting, which will involve many of the most senior civilian and military leaders at the Pentagon. (*Id.*) As Chairman, General Punaro cannot be absent from these meetings. (*Id.*) At these meetings, the Board will be deliberating several key matters to make recommendations to the Secretary of Defense. (Punaro Affidavit, ¶ 14.) These deliberations will involve, among other things, the Board meeting with the second most senior member of the military, Admiral Sandy Winnefeld, Vice Chairman of the Joint Chiefs of Staff, and the former Secretary of the Air Force Mike Donley. (*Id.*) The Board also has meetings scheduled on September 5, 2013 with senior Pentagon personnel on subjects that are classified and very time sensitive. (*Id.*) Given General Punaro's unavailability to attend Court and testify about the Committee's views on the Transfer Motion, the Committee respectfully requests that the Court consider taking his testimony during the morning of Friday September 7, 2013, or at the Court's convenience thereafter.

North Carolina Bankruptcy Court because: (i) Charlotte, North Carolina is the Debtors' principal place of business and — albeit erroneously — the location of their principal assets; (ii) the proximity of certain of the Debtors' financial advisor to a North Carolina forum; (iii) the location of the Debtors' books and records, officers and executives; and (iv) the location of the Debtors' creditors. (*See* Transfer Motion, Preliminary Statement.)

21.     As the Committee demonstrates below, Delaware is the more appropriate venue for these bankruptcy cases. A review of all the relevant data shows that a super majority of the creditors are located outside of North Carolina, including a heavy concentration in close proximity to Delaware. More importantly, the lenders have committed to financing the Debtors' bankruptcy cases in Delaware, but have not committed to doing so in a venue outside of Delaware. Accordingly, the unsecured creditors have a better chance for a recovery in a Delaware venue. In addition, the proximity of Delaware for the Committee is more convenient than a North Carolina forum. Finally, the most significant asset of the Debtor is its intellectual property. That is not located in North Carolina. The Committee therefore submits that Mr. Harris cannot present facts that heavily weigh in favor of the Transfer Motion and as such it should be denied.

22.     The Committee's objection is limited to those facts and issues that affect the Committee and its constituents. Since the Debtors and lenders are in a position to raise additional and other factual and legal arguments that may fall outside of the knowledge of the Committee, the Committee hereby joins in any other opposition that is filed to the Transfer Motion.

**A.    Venue Is Proper In Delaware Because DesignLine Corporation
And DesignLine USA, LLC Are Domiciled In This State.**

23.    Pursuant to 28 U.S.C. § 1408, which governs venue in chapter 11 cases, a debtor

may commence a chapter 11 proceeding in a district where it (a) is domiciled; (b) has its

principal place of business; (c) holds its principal assets; or (d) has an affiliate with a pending

bankruptcy case.  *See* 28 U.S.C. § 1408 (1), (2). A corporation is domiciled in the state where it

is incorporated.  *See Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957)

(equating terms "resident" and "domicile" for corporations to the state of incorporation.)  As

Delaware corporations, DesignLine Corporation and DesignLine USA, LLC are domiciled in

Delaware.  Therefore, the venue selected by Debtors is proper under 28 U.S.C. § 1408.

**B.    The Debtors' Choice Of Forum — And The Committee's Support
For That Forum — Should Be Accorded Substantial Weight And Deference.**

24.    It is well established that when venue is proper, a debtor's choice of forum is to

be accorded substantial weight and deference. *See In re Del. & Hudson Ry. Co.*, 96 B.R. 467,

469 (Bankr. D. Del. 1988), appeal denied, 96 B.R. 469 (D. Del), aff'd, 884 F.2d 1383 (3rd Cir.

1989; *In re Ocean Properties of Delaware, Inc.*, 95 B.R. 304, 305 (Bankr. D. Del. 1988)

(holding that the Debtors' choice of Delaware forum is entitled to "great weight" because venue

is proper).  A court considering a transfer motion "[s]hould exercise its power to transfer

cautiously. . ." *In re Enron, Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) (hereafter cited as

"Enron I") (citing *In re Commonwealth Oil Refining Co., Inc. (Commonwealth of Puerto Rico v.*

*Commonwealth Oil Refining Co., Inc.)*, 569 F.2d 1239, 1241 (5th Cir. 1979) (hereafter cited as

"CORCO"), cert denied, 444 U.S. 1045 (1980) (internal citations omitted)); *accord In re*

*Fairfield Puerto Rico, Inc.*, 333 F. Supp. 1187, 1989 (D. Del. 1971) (noting "[t]his Court should

not freely abandon to any other district its duty to determine a matter clearly within its

jurisdiction."). As a result, "a heavy burden of proof rests on the moving party to demonstrate

that the balance of convenience clearly weighs in his favor." *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (*quoting Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc. (In re Lionel Corp.)*, 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982)).

25.     Where the transfer of venue merely shifts the inconvenience from one party to the other, or where the equities only slightly favor the movant, the choice of forum chosen by the debtor should not be disturbed. *Enron I*, 274 B.R. at 343.

26.     Courts also give deference to the preference of the unsecured creditors committee with respect to venue. *Enron I*, 274 B.R. at 345 (stating that it is "relevant to weigh the position of the Committee" in determining change of venue.) *See also In re Dunmore Homes, Inc.*, 380 B.R. 663, 676 (citing *Enron I*, 274 B.R. at 345).

27.     Here, the Committee and (the Debtors) believe that Delaware is the most appropriate venue for these cases.  With seventy percent (70%) of the creditors of DesignLine USA LLC, ninety percent (90%) of the creditors of DesignLine corporation, seventy percent (70%) of the Debtors' consolidated top twenty (20) creditors, and one hundred percent (100%) of the Debtors' secured lenders being located outside of North Carolina, transferring venue will merely shift any inconvenience of Mr. Harris onto numerous other creditors.  In addition, as noted below, given that the lenders are willing to finance these bankruptcy cases in a Delaware forum and have not committed to do so outside of Delaware, the chosen Delaware venue should not be disturbed.  This is especially important where, as here, any recovery for unsecured creditors in this case will most likely depend on the lender's commitment to finance the Debtors' bankruptcy cases.

28.     Accordingly, Mr. Harris cannot meet his heavy burden to disturb the Debtors' chosen and Committee's preferred venue.

**C.     Movant Has Failed To Prove That Transfer Of Venue Is Warranted
In The Interest Of Justice Or For The Convenience Of The Parties.**

29.     The court should deny the Transfer Motion because the transfer of venue neither
is in the interest of justice or the convenience of the parties.  28 U.S.C. § 1412 provides "[a]
district court may transfer a case or proceeding under chapter 11 to a district court for another
district, in the interest of justice <u>or</u> for the convenience of the parties." A court may transfer a
case when it "appropriate either in the interest of justice or for the convenience of the parties, and
that this statutory provision creates two distinct analytical bases upon which transfer of venue
may be grounded." *In re Qualteq, Inc.*, No. 11-12572 (KJC), 2012 Bankr. LEXIS 503, at *17,
2012 WL 527669 (Bankr. D. Del. Feb. 16, 2012) (citing *In re LaGuardia Assoc.*, 316 B.R. 832,
837 (Bankr.E.D.Pa. 2004). The decision of whether to transfer venue is within the court's
discretion based on an individualized, case-by-case analysis of convenience and fairness. *Enron
I*, 274 B.R. at 342.

30.     The entity requesting a change of venue must demonstrate, by a preponderance of
the evidence, that transfer of venue is necessary to achieve the statutory purposes of the
Bankruptcy Code. *Enron I*, 1274 B.R. at 342; *CORCO*, 569 F.2d at 1241 (citing *In re Fairfield
P.R., Inc.*, 333 F. Supp. 1187, 189 (D. Del. 1971)); *In re Alcorn Corp.*, No. 12-13742 (ELF),
2012 WL 2974889 at * 2 (Bankr. E. D. Pa. July 20, 2012); *In re Rehoboth Hospitality, LP*, No.
11-12798 (KG), 2011 WL 5024267 at *3 (Bankr. D. Del. 2011) (noting"[t]he burden of proof is
on the party requesting transfer.").

1.      **Movant Has Failed To Demonstrate That Transfer To**
        **The North Carolina Bankruptcy Court Is Proper For**
        **The Convenience Of The Parties.**

        31.     Although 28 U.S.C. § 1412 allows for significant discretion in considering the

convenience of parties for a particular venue, the courts of this district have articulated six

factors that it generally takes into account to help guide the use of that discretion:

        a.      The proximity of the Debtor to the court;

        b.      The proximity of creditors of every kind to the court;

        c.      The proximity of witnesses necessary to administration of the case;

        d.      The location of the assets;

        e.       The economic administration of the estate; and

        f.      The necessity for ancillary administration.

(hereinafter, the "CORCO factors"); *In re Qualteq, Inc.*, No. 11-12572 (KJC), 2012 Bankr.

LEXIS 503, 2012 WL 527669 (Bankr. D. Del. Feb. 16, 2012); *In re Enron Corp.*, 284 B.R. 376,

387 (S.D.N.Y. 2002) (hereafter cited "Enron II); *In re Garden Manor Assoc., LP*, 99 B.R.

551,553 (Bankr. S.D.N.Y. 1988); *CORCO*, 596 F. 2d at 1247.[2]

        32.     The relevance and weight of the various overlapping factors depend upon the

circumstances of the particular bankruptcy case involved. Not all of the facts may be relevant in

a particular case nor are they entitled to the same weight.

        33.     The factors are merely intended to be a guide. *Alcorn Corp.*, 2012 WL 2974889

at *3 (citations omitted).  As noted above, the Committee only discusses the CORCO factors to

the extent they are relevant to the Committee and its constituents.  Because other parties may

---

[2]      It is noteworthy that the CORCO factors were developed at a time where CourtCall did
        not exist, mobile phones were not generally available, electronic data rooms were
        unheard of, email did not exist (let alone facsimiles), and electronic filing had not been
        contemplated.  Accordingly, any analysis of the CORCO factors should be considered
        within the overlay of today's technological capabilities.

raise other appropriate legal and factual arguments in their analysis of the CORCO factors, the Committee hereby joins in such other opposition.

### a.    The Proximity of the Debtors to the Court

34.    The Movant has not demonstrated that the venue should be transferred based on the proximity of the Debtor to the North Carolina Bankruptcy Court.   The proximity of the debtor is a consideration that focuses on the debtor's employees who must appear in court. *Enron II*, 284 B.R. at 392-3.  Practice shows that it is the professionals who represent the debtors who are routinely required to appear in court.  *See In re Safety-Kleen Corp.*, Case No. 00-2303 (PJW), bench decision at 48 (Bankr. D. Del. July 11, 2000) ("the vast majority of activities in this court involve lawyering and only a very, very limited number of principals have to appear on very, very limited occasions").   In any event, the Debtors' discretion to choose this forum militates against the idea that Delaware is not a proper venue based on the proximity of Debtor.  It also is noteworthy that any access to the Debtors' books and records presumably can be accomplished electronically.

### b.    The Proximity of Creditors to the Court

35.    The Movant also has not demonstrated that venue should be transferred based on the proximity of the creditors of every kind to the North Carolina Bankruptcy Court. The proximity of a significant number of creditors is a factor in favor of transferring venue. *In re Qualteq, Inc.*, 2012 Bankr. LEXIS 503, at *5 (noting that forty-five percent (45%) of creditors are located in Illinois as a significant factor in favor of transferring venue to the Northern District of Illinois.); *see also In re OmtronUSA LLC*, Case No. 12-13076 (BLS) (Bankr. D. Del. Dec. 21, 2012) (granting a change of venue where eighty percent (80%) of the creditors were in North Carolina).   A venue where the debtor has a greater availability of financing, however, is

11

considered <u>more</u> important than the location of the largest number of its creditors. *In re Dunmore Homes, Inc.*, 380 B.R. 663, 673 (*citing CORCO*, 596 F.2d at1247-48, *In re Enron*, 274 B.R. at 348) ("Courts evaluating the economic and efficient administration of the case have looked at 'the need to obtain post petition financing, the need to obtain financing to fund reorganization, and the locations of the sources of such financing and the management personnel in charge of obtaining it.")

36.     In this case, a super majority of creditors are located outside of North Carolina. Specifically, ninety percent (90%) of DesignLine Corporations' creditors are not located in North Carolina.  To the contrary, most of them are located in New York and southeastern Pennsylvania.  Seventy percent (70%) of DesignLine USA, LLC's creditors and the consolidated top twenty creditors also are not located in North Carolina.  Moreover, all of the Debtors' prepetition lenders are not located in North Carolina.

37.     Notably, for those claimants actually located in North Carolina, practice has demonstrated that they are unlikely to attend court hearings except with respect to their individual proofs of claim.  The Court can and does provide for telephonic appearances to facilitate participation by creditors and their counsel of choice.

38.     Moreover, as the CORCO Court noted, consideration relating to the Debtors' access to DIP financing is given more weight than the location of the largest number of creditors. Even though a super majority of the creditors are located outside of North Carolina anyway, the Debtors have lenders committed to post-petition financing in this venue.  The Debtors do not have that commitment in a forum outside of Delaware.  Given that any recovery by unsecured creditors in this case will most likely depend upon a successful sale process financed by the lenders, the Committee supports — and the Court should defer to — the Debtors' chosen venue.

       c.       **The Proximity of the Witnesses Necessary to the Administration of the Estate**

39.     The Movant has not demonstrated that venue should be transferred based on the proximity of the witnesses. The witnesses a Court must consider are those who are likely to appear in Court: those who are intimately familiar with the financial status of the debtor. *Enron II*. 284 B.R. at 392-3. "[W]itnesses are presumed to be willing to testify in either forum despite the inconvenience that one of the forums would entail." *HLI Creditor Trust v. Keller Rigging Constr., Inc. (In re Hayes Lemmerz Int'l Inc.)*, 312 B.R . 44, at *47, 2004 Bankr. LEXIS 1047 (Bankr. D. Del. 2004) (quoting *IRS v. CM Holdings, Inc.*, 1999 U.S. Dist. LEXIS 10054, No. CIV.A.97-695, 1999 WL 459754, at *4 (Bankr. D. Del. 1999). The Debtors and the lenders have supported this venue and, therefore, should be presumed to have accepted this forum as a convenient forum for their witnesses. More importantly, the Chair of the Committee intends to be active in these cases. A Delaware venue is accessible to the Chair of the Committee by way of approximately a one hour train ride. North Carolina, however, does not offer the same accessibility. In addition, the Debtors' largest creditor resides in New Jersey. Witnesses involved in connection with the resolution of that creditor's dispute will be closer in proximity to Delaware. It is also noteworthy that national counsel for the Debtors' alleged WARN Act claimants also is in closer proximity to Delaware than North Carolina. That action, which is pending before this Court, unlikely will require courtroom testimony from the plaintiffs.

       d.       **Location of the Assets**

40.     The Movant has not demonstrated that the venue should be transferred based on the location of the assets. When a debtor is national and international in character, the location of assets offers little weight to the venue transfer analysis. *See In re PWS Holding Corp.*, 1998 Bankr. LEXIS 549, at *12-13 (Bankr. D. Del. Apr. 28, 1998) (denying transfer of venue, recognizing that "bankruptcy practice and jurisdiction reflect American business" and that "most

American businesses . . . are truly interstate in practice, national in character" thereby diminishing the importance of the convenience factor.)

41.    Here, not only is the Debtors' business interstate in character (as shown by the fact that seventy percent of its creditors and nearly all of its customers are located outside of North Carolina), but there are few — if any — assets in North Carolina having any value that would require the administration of the estate in that forum.  Moreover, the Debtors' most valuable asset — its intellectual property — is not located in North Carolina.  *In re Wardtech Systems, Inc. v. Integrated Network Solutions, Inc*., 2009 WL 4884241 (E.D. Cal. December 10, 2009, Civil Action No. 04-01971-MCE-EFB).

### e.    The Economic Administration of the Case

42.    The economic administration of this case can best be effectuated in Delaware. Thus, this factor weighs in favor of a Delaware forum.  "It is oft-repeated that the factor accorded the most weight is promotion of the economic and efficient administration of the estate." *In re Qualteq, Inc.*, 2012 Bankr. LEXIS 503, at * 17, 2012 WL 527669 (citing *CORCO*, 569 F.2d at 1247.)

43.    A Delaware forum offers the most efficient administration of this bankruptcy estate.  Aside from it being a more convenient forum for the Debtors, the Committee, and the DIP Lenders, this Court can most efficiently handle the requirements of this case.  This bankruptcy will involve a sale of the Debtors' intellectual property and series of negotiations among the Committee, the Debtors and the lenders.  The assets in North Carolina likely will not be relevant.  While the expertise of the Bankruptcy Court of North Carolina cannot be questioned, the fact is that the efficient administration of these cases depend on the cooperation and support of all of the Debtors' constituents, which unanimously support a Delaware forum. With the transfer of these cases to North Carolina Bankruptcy Court, the lenders' commitment to

finance these bankruptcy cases (and therefore any recovery to the Debtors' unsecured creditors) is uncertain.

### f.    The Necessity for Ancillary Administration if Liquidation Should Result

44.    The last factor, ancillary administration of the bankruptcy estate should a liquidation result, also favors a Delaware venue.  The Debtor's assets in North Carolina are not of significant value.  Upon information and belief, the Debtors own no real estate and its business records are accessible from anywhere.  The Committee is unaware of any litigation pending against the Debtors in North Carolina.  To the contrary, the Debtors' biggest dispute involves a New Jersey quasi-governmental agency – New Jersey Transit.  Accordingly, ancillary administration in North Carolina in the event of the liquidation will be insignificant.

### 2.    Movant Has Failed To Demonstrate That Transfer to North Carolina Bankruptcy Court Is Proper In the Interest of Justice.

45.    When considering the "interest of justice", the court applies broad and flexible standard and should consider "whether transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness and fairness." *Enron II*, 284 B.R. at 387. Concerns that speak to the "interest of justice" include facts such as the importance of a debtor to the welfare and economic stability of a jurisdiction. *CORCO*, 596 F. 2d at 1248.

46.    Transferring venue will delay (or moot) consideration of the DIP Motion resulting in a delay of the Debtors' efforts to sell its intellectual property.  For this reason — and all of the other reasons set forth above — transferring venue of these bankruptcy cases to the North Carolina Bankruptcy Court will not promote the efficient administration of the estate, judicial economy, timeliness or fairness.

WHEREFORE, for all of the foregoing reasons, the Committee respectfully requests that this Court deny the Motion to Transfer and grant such other relief that is just and proper under the circumstances.

Dated:  September 3, 2013

BENESCH, FRIEDLANDER, COPLAN
 & ARONOFF LLP

By:
  /s/ Michael J. Barrie
  Michael J. Barrie, Esquire (No. 4684)
  Jennifer R. Hoover, Esquire (No. 5111)
  Jennifer E. Smith, Esquire (No. 1202)
  222 Delaware Avenue, Suite 801
  Wilmington, DE 19801
  Ph. (302) 442-7010
  Fax:  (302) 442-7012
  mbarrie@beneschlaw.com
  jhoover@beneschlaw.com

  *Proposed Counsel for the Official Committee of Unsecured Creditors*

16